(119 P.3d 684)

No. 93,450

In the Matter of the Marriage of JANET BOULEY, f/k/a KIMBRELL, *Appellee,* and WILLIAM DAVID KIMBRELL, *Appellant.*

Opinion filed September 16, 2005.

*Brant M. Laue* and *Chadler E. Colgan*, of Armstrong Teasdale LLP, of Kansas City, Missouri, for appellant.

*Sherri E. Loveland*, of Stevens & Brand, L.L.P., of Lawrence, for appellee.

Before MALONE, P.J., GREEN and BUSER, JJ.

GREEN, J.: William David Kimbrell (David) appeals the trial court's decision regarding parenting time with his 16-year-old son Evan Kimbrell. The issue in this case is whether the trial court can condition a noncustodial parent's right to parenting time with his or her minor child upon the desires of the child. We determine that this cannot be done. K.S.A. 2004 Supp. 60-1616(a) makes it clear that a parent has a right to reasonable parenting time with his or her minor child "unless the court finds, after a hearing, that the exercise of parenting time would seriously endanger the child's physical, mental, moral or emotional health." Conditioning parenting time on the wishes of a minor child improperly gives the child the authority to determine a noncustodial parent's rights to parenting time and visitation and can have the effect of completely denying the noncustodial parent's rights to parenting time.

Under the facts of this case, we determine that in the absence of a finding that parenting time "would seriously endanger the child's physical, mental, moral or emotional health," the trial court must set a reasonable and specific schedule for David's parenting time with Evan. Accordingly, we reverse in part and remand to the trial court with directions to either determine an appropriate and reasonable parenting time and visitation schedule or make the required statutory finding that the exercise of parenting time in this case would seriously endanger the child's physical, mental, moral, or emotional health.

The parties, David Kimbrell and Janet Bouley, formerly known as Janet Kimbrell, divorced in April 1996, after nearly 16 years of marriage. The parties had three children together, Anna Kimbrell (date of birth 04/18/81), Dylan Kimbrell (date of birth 09/05/86), and Evan (date of birth 10/09/88). At present, Evan is the only minor child involved in this case.

At the time of their divorce, David and Janet entered into a mediated agreement, where they agreed to joint custody of their

children and a shared parenting time arrangement. Apparently, about 6 months after the divorce, Janet and David resumed their relationship, but it was bumpy over the next several years. They ended their relationship in May 2000.

In July 2001, David moved to modify the 1996 divorce decree and for an emergency change of placement for Dylan and Evan. In his motion, David asked that he be given residential custody of Dylan and Evan, that the trial court order strict supervision of Janet's contact with the boys, and that the trial court order a psychological evaluation of Janet, Dylan, and Evan to determine whether Janet was alienating the children from him. David maintained that Janet had "commenced a program and concerted effort to alienate the three children" from him and that she had interfered with his visitations and the parenting time and visitation schedule. At David's request, these motions were dismissed in March 2002.

For summer 2001, the parties agreed to a split parenting arrangement where the children would essentially spend alternating weeks with each parent. In addition, the parties agreed to participate in psychological evaluations and testing. The agreed parenting plan was to continue until psychological evaluations and reports were completed.

Upon agreement by the parties, the trial court appointed Susan Vorhees, Ph.D., to conduct evaluation and testing of the parties and their minor children. Although David later moved for a protective order to prohibit the dissemination of Dr. Vorhees' proposed report, the trial court ordered that Dr. Vorhees' evaluation be provided to the court. Dr. Vorhees' report, which was filed in December 2002, indicated that David was alienated from his children due to his own behavior. According to Dr. Vorhees, "[David] is alienated from them by his own inability to accept that they and their mother are independent individuals, that they need and want a relationship with both parents, and that he cannot be in control of either of these relationships." Dr. Vorhees indicated that David's alienation from the children could be resolved by David trying to accept his children for who they are and by listening to his children.

The trial court, on its own motion, appointed retired District Court Judge James Buchele as the case manager in January 2002. The trial court's decision in this case indicates that the parties had been voluntarily working with Judge Buchele since October 2001. Judge Buchele recommended in January 2002 that the children reside with Janet and that David's parenting time be "as approved by the Case Manager or as ordered by the Court." David moved for review of these recommendations and also for an order for family therapy and other relief.

In February 2002, Judge Buchele made additional recommendations, including that Dylan and Evan be with David on Wednesdays after school until 8 p.m. and on alternating Saturday and Sunday afternoons. Judge Buchele again made recommendations in March 2002. Judge Buchele recommended that David spend a week during spring break with Evan and that the parties participate in family counseling with Michael Lubbers, Ph.D. At that time, Dylan and Evan were seeing Dale Barnum, Ph.D., and Janet and David were each working with a mental health professional. David objected to both the February 2002 and March 2002 recommendations.

On June 12, 2002, Judge Buchele submitted his report and recommendations and also responded to David's objections. In his report, Judge Buchele addressed David's allegations that Janet had alienated Dylan and Evan. Judge Buchele's opinion was that Dylan's and Evan's alienation from David was caused by David's own conduct. Nevertheless, Judge Buchele was encouraged by the fact that David had spoken with Dr. Barnum and had agreed to work on a new approach to communicating with Evan.

In his report, Judge Buchele recommended modification of the existing parenting plan. Judge Buchele expanded David's parenting time with Evan, setting forth specific times that Evan would spend with David. Judge Buchele's recommendations assumed there would be some change in the status quo. Judge Buchele recommended that David's parenting time with Dylan be "as they may agree."

After David and Janet separately filed objections to Judge Buchele's recommendations, Judge Buchele issued a supplemental re-

port on June 27, 2002. Judge Buchele indicated that the brief attempt to expand David's parenting time with Evan had been disastrous. Judge Buchele concluded that the problems in this case could not be resolved by additional time being spent between Evan and his father. Judge Buchele recommended that Evan be with David on Wednesdays from 4 to 8 p.m. and for one 24-hour period every weekend. Both David and Janet objected to Judge Buchele's June 27, 2002, supplemental report and recommendations.

In November 2002, upon David's motion, the trial court appointed Dr. Richard Gardner, M.D., to conduct a parental alienation syndrome (PAS) evaluation of the family. The trial court terminated its order for counseling with Dr. Lubbers but ordered Dylan and Evan to continue therapy with Dr. Barnum. Moreover, the trial court ordered that the contact between Evan and David continue under the current arrangement and that the contact between Dylan and David be as Dylan desired.

Dr. Gardner completed the PAS evaluation and filed a written report in January 2003. Dr. Gardner found no evidence that the children were suffering from PAS or that Janet was a PAS alienator. Instead, Dr. Gardner indicated that the primary source of the children's alienation from David was David's own psychiatric problems, especially his obsessive-compulsive personality disorder and paranoid trends. Dr. Gardner recommended that Janet continue to have primary parenting time with Dylan and Evan, that Janet have primary legal custody, and that the court rescind the order requiring Dylan and Evan to participate in therapy. Dr. Gardner indicated that the family could be helped with appropriate treatment given to David, Dylan, and Evan, but that such treatment should be on a voluntary basis.

In September 2003, David moved for the appointment of another case manager, for an order for the parties and children to participate in therapy, and for an order enforcing the joint decision making required under the parties' joint custody agreement. Attached to David's motion were letters from Nancy Hughes, Ph.D., LSCSW, who had conducted an adoption home study with David and his wife, and from John Spiridigliozzi, Ph.D., a licensed psychologist who had been working with David for approximately 3

years. Both Dr. Hughes and Dr. Spiridigliozzi recommended the appointment of a case manager. Moreover, Dr. Hughes indicated that she had read some of the file that David had compiled in this case and that it did not fit with her impression of David.

In November 2003, the trial court appointed William F. Ebert, III, as special master, whose duties included recommending therapy for the parties and their children as well as preparing findings of fact and conclusions of law for the trial court to review if the parties could not agree on child-rearing decisions or therapy.

After meeting with the parties, reviewing the court file, which included the reports issued by the various professionals, reviewing email communication, contacting individuals identified by the parties, and discussing the case with the parties' attorneys, the special master issued his written report in January 2004. In an order issued in February 2004, the trial court adopted the following proposed conclusions of law of the special master:

"1. If David Kimbrell genuinely desires to re-establish meaningful relationships with his children, it will be necessary for him to participate in individual therapy with a therapist who is knowledgeable about parental alienation syndrome and knowledgeable about parents who are emotionally abusive, especially those with significant psychiatric problems.

"2. If the individual therapy process with David is successful (*i.e.* if David can be helped to . . . appreciate . . . how he has contributed to the damaged relationships with his children and helped to understand how to modify his expectations and behavior accordingly) then the door should be opened to including Evan and/or Dylan in the therapy process, if they choose to participate (as per Dr. Gardner's recommendations, §6, Pages 117, 118, Gardner Report)."

David moved for reconsideration of the trial court's decision or, alternatively, to modify its previous orders. In his motion, David requested specific orders relating to the following: parenting time and visitation, exchanging information regarding the children, counseling, and terminating the special master's appointment. In his motion, David argued that there could not be a therapy precondition to his contact with his children. In addition, David argued that the special master's report was unreliable because it was factually flawed, placed undue reliance on questionable expert opinions, and did not comport with due process.

In a memorandum decision filed in September 2004, the trial court granted in part and denied in part David's motion. The trial court concluded:

"1.Based upon the case history, recommendations filed with the court, and the lack of any success with court-ordered therapy, the court will not order any of the parties in this case to participate in therapy. However, the court concurs with the special master's recommendation that Respondent participate in therapy to attempt to gain some insight into his relationship with his biological children and that any of his children participate in that therapy as they would like.

"2. Dylan, DOB 09/05/86, is now eighteen. His parenting time is no longer under the jurisdiction of this court.

"3. Evan, DOB 10/09/88, is almost sixteen. His parenting time with his father, given his maturity and the history of this case, should be as is mutually requested."

In addition, the trial court directed David and Janet to meet on a quarterly basis with their attorneys and the special master "to exchange information about the general health, welfare, and education of the minor child." The trial court stated that Janet had the right to make the necessary day-to-day decisions for Evan. The trial court noted that David's contact with Evan was not contingent upon David participating in therapy but was "contingent upon the contact being mutually requested."

*Standard of Review*

In reviewing the trial court's decision, we bear in mind that the judgment of the trial court regarding parenting time and visitation will not be disturbed absent an affirmative showing of abuse of discretion. See *Skillet v. Sierra*, 30 Kan. App. 2d 1041, 1048-49, 53 P.3d 1234, *rev. denied* 275 Kan. 965 (2002); *In re Marriage of McNeely*, 15 Kan. App. 2d 762, 764, 815 P.2d 1125, *rev. denied* 249 Kan. 776 (1991). "Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. [Citation omitted.]" *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 44, 59 P.3d 1003 (2002). However, "if a constitutional or statutory right has been violated, the trial [court's] use of discretion is limited. Under these circumstances there is a greater need for articulation by the trial [court] of the reasons for [its] 'discretionary'

decision." *Saucedo v. Winger*, 252 Kan. 718, 731, 850 P.2d 908 (1993).

Moreover, the arguments raised by David require this court to review the factual findings and legal conclusions in the trial court's September 2004 memorandum decision. The function of an appellate court is to determine whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). An appellate court's review of conclusions of law is unlimited. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.3d 214 (2004).

*Due Process*

David first argues that the trial court's decision infringes upon his parental rights without any showing that he is an unfit parent or that he presents any threat or danger to his child. David maintains that the trial court's decision results in a denial of due process.

It is well established that parents have fundamental rights in the custody and control of their children under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See, *e.g. Troxel v. Granville*, 530 U.S. 57, 65-66, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000). In *In re Cooper*, 230 Kan. 57, 64, 631 P.2d 632 (1981), our Supreme Court stated: "Virtually all jurisdictions including Kansas recognize the parents' rights of custody and control of their children are liberty interests protected by the Fourteenth Amendment Due Process Clause." Moreover, in *In re Adoption of B.M.W.*, 268 Kan. 871, 881, 2 P.3d 159 (2000), our Supreme Court recognized that " ' "[b]asic parental rights are fundamental rights protected by the Fourteenth Amendment to the Constitution of the United States. The right to be the legal parent of a child is one of these rights, which cannot be abrogated except for compelling reasons. [Citations omitted.]" ' "

Noting that a parent has a right to provide a home and direct the children's upbringing and education, this court in *Spradling v.*

*Harris*, 13 Kan. App. 2d 595, 597, 778 P.2d 365, *rev. denied* 245 Kan. 786 (1989), stated the following:

"The Fourteenth Amendment to the United States Constitution provides: 'No State shall . . . deprive any person of life, liberty, or property, without due process of law.' A parent's right to establish a home and direct the upbringing and education of children has long been recognized as a fundamental right protected by the Fourteenth Amendment. [Citations omitted.]"

See also *Washington v. Glucksberg*, 521 U.S. 702, 720, 138 L. Ed. 2d 772, 117 S. Ct. 2258 (1997) ("[W]e have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specifically protected by the Due Process Clause includes the right[ ] . . . to direct the education and upbringing of one's children.").

It is unclear whether parents have a specific due process right under the United States Constitution regarding parenting time and visitation with their children. See Rutkin, 3 Family Law and Practice, Child Custody and Visitation §32.09[2], p. 32-268 (MB July 2005) ("Some commentators contend that the noncustodial parent's right to visit[ation] is a constitutionally protected right. Others find the right to visitation to be among the natural rights of a fit parent."). Nevertheless, Kansas law as codified in K.S.A. 2004 Supp. 60-1610(a)(2)-(5) and K.S.A. 2004 Supp. 60-1616(a) and (c) makes it clear that parents have a right to parenting time and visitation with their children, absent exceptional circumstances, such as a threat to the children's welfare. This is in line with other jurisdictions which recognize that noncustodial parents have a natural right to visitation with their children. See *Maxwell v. LeBlanc*, 434 So. 2d 375, 376 (La. 1983) (right of visitation for noncustodial parent is natural right); *Kulla v. McNulty*, 472 N.W.2d 175, 182 (Minn. App. 1991) (" '[V]isitation is to be regarded as a parental right essential to the continuance and maintenance of a child-to-parent relationship between the child and noncustodial parent[.]' "); *Young v. Young*, 212 App. Div. 2d 114-122, 628 N.Y.S.2d 957 (1995) (visitation is joint right of noncustodial parent and child); *Pettry v. Pettry*, 20 Ohio App. 3d 350, 352, 486 N.E.2d 213 (1984) (noncustodial parent's visitation right is natural right and should only be denied under extraordinary circumstances).

*K.S.A. 2004 Supp. 60-1616(a)*

Under K.S.A. 2004 Supp. 60-1616(a), "[a] parent is entitled to reasonable parenting time unless the court finds, after a hearing, that the exercise of parenting time would seriously endanger the child's physical, mental, moral or emotional health."

In interpreting K.S.A. 2004 Supp. 60-1616(a), we note that an appellate court's review of statutory interpretation, which is a question of law, is unlimited. The appellate court is not bound by the trial court's interpretation of a statute. See *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004). Moreover, the following principles are helpful in our interpretation of K.S.A. 2004 Supp. 60-1616(a):

"The fundamental rule of statutory construction to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.]" *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003).

The clear intent of K.S.A. 2004 Supp. 60-1616(a) is to create a rebuttable presumption that a parent is entitled to reasonable parenting time and visitation. This presumption may be rebutted if, after a hearing, the trial court finds "that the exercise of parenting time would seriously endanger the child's physical, mental, moral or emotional health." K.S.A. 2004 Supp. 60-1616(a); see *In re Marriage of Kiister*, 245 Kan. 199, 201, 777 P.2d 272 (1989). Without such a finding, however, K.S.A. 2004 Supp. 60-1616(a) indicates that a trial court must enter an order for reasonable parenting time.

In this case, there was no finding by the trial court that the exercise of parenting time by David would seriously endanger Evan's physical, mental, moral, or emotional health. Absent this finding by the trial court, David was entitled to reasonable parenting time with Evan under K.S.A. 2004 Supp. 60-1616(a). In fact, the trial court's September 2004 decision indicated that David should be allowed to have parenting time with Evan. The trial court, however, made David's parenting time contingent upon Evan's desires or requests. Our inquiry now turns to whether the

trial court's parenting time finding, which conditioned visitation on Evan's wishes, improperly impinged on David's right to reasonable parenting time and visitation.

*Trial Court's Order Relating to Parenting Time*

David maintains that the trial court erred in giving dispositive effect to Evan's preference relating to parenting time and visitation. David argues that a court order that places the determination of parenting time with the minor child is improper and is a complete abrogation of judicial authority. David contends that a trial court may either deny parenting time completely in certain exceptional circumstances subject to very high standards or set specific times when a parent may exercise his or her parenting time.

In researching David's argument, we find no Kansas cases that have addressed the issue of whether a trial court may condition parenting time on the desires or requests of a minor child. David cites to several cases from other jurisdictions which indicate that a court should not give minor children the authority to determine a noncustodial parent's parenting time and visitation.

In *Kreitz v. Kreitz*, 750 S.W.2d 681, 686 (Mo. App. 1988), the Missouri Court of Appeals held that it was improper for the trial court in a divorce decree to award the father visitation rights and temporary custody "as arranged to by the minor children." In remanding the case to the trial court, the appellate court noted that the order entered by the trial court did not set forth certain and reasonable rights of visitation. The court further stated that in the absence of finding the father to be an unfit parent, "the trial court should encourage a continued relationship between the divorced parent and child by ensuring that the parent has a right to reasonable access to the child. [Citation omitted.]" 750 S.W.2d at 686. Similarly, in *Jordan v. Jordan*, 288 App. Div. 2d 709, 709-10, 732 N.Y.S.2d 478 (2001), the court determined that visitation should not have been based upon the children's wishes, in the absence of evidence that significant emotional harm would result to the children from visitation.

In *Morgan v. Morgan*, 20 N.C. App. 641, 642, 202 S.E.2d 356 (1974), the North Carolina Court of Appeals held that it was im-

proper for the trial court to order that the father's visitation rights would be subject to the mother's consent and would be discretionary with the child. In vacating the trial court's judgment, the North Carolina Court of Appeals stated: "While we realize that the preferences of a 14 year old are entitled to some weight in determining custody and visitation rights, it is error to allow the minor to dictate, at will from time to time, whether the judgment of the court is to be honored." 20 N.C. App. at 642.

The holdings from *Kreitz*, *Jordan*, and *Morgan* indicate that a trial court's orders regarding parenting time and visitation should not be conditioned upon a minor child's desires to see (or not see) the noncustodial parent. We find these cases to be persuasive. The dissent cites to *Jabri v. Jabri*, 193 App. Div. 2d 782, 783-84, 598 N.Y.S.2d 535 (1993), where the appellate court upheld a ruling conditioning visitation on the wishes of a 16-year-old child where psychiatric testimony indicated that compulsory visitation would not be in the child's best interests. Nevertheless, *Jabri* is distinguishable because there was no mention within that case that the court's order of visitation was constrained by a statute similar to K.S.A. 2004 Supp. 60-1616(a). More important, in that case, there was evidence to support a possible "endangerment" and a finding that visitation would not be in the child's best interest.

Here, the parenting time and visitation order must comply with K.S.A. 2004 Supp. 60-1616(a). The order entered in this case gives the minor child the authority to determine the noncustodial parent's parenting time and can have the effect of denying the noncustodial parent his or her right to parenting time. See *Nancy E.M. v. Kenneth D.M.*, 316 Pa. Super. 351, 353, 357, 462 A.2d 1386 (1983) (ordering visitation at desire of 17-year-old child is tantamount to denying a parent's visitation rights). Without a finding that "the exercise of parenting time would seriously endanger the child's physical, mental, moral or emotional health" under K.S.A. 2004 Supp. 60-1616(a), such orders are improper.

In his brief, David has informed us that he has not had any parental contact with Evan since late 2002. If this is in fact the case, David has been effectively denied any parenting time with Evan. With no statutory finding that David's parenting time would

seriously endanger Evan, the trial court should have ordered certain and reasonable parenting and visitation times in order to ensure that David would have the opportunity to exercise his parenting time rights. The trial court improperly made David's parenting time with Evan contingent on Evan's desires or requests to see his father.

We wish to make clear that the above analysis does not preclude the trial court from considering a child's desires when setting a parenting time and visitation schedule. In fact, K.S.A. 2004 Supp. 60-1610(a)(3)(B) states that "[i]n determining the issue of child custody, residency, and parenting time, the court shall consider all of the relevant factors, including but not limited to: . . . (iii) the desires of the child as to the child's custody or residency." Under our applicable statutes, a child's desires is only one of the factors to be considered when determining the issue of parenting time and visitation. Noting that a court may consider a child's wishes concerning visitation but that such wishes are not controlling even in jurisdictions that afford great weight to an older child's preference, Professor Linda Henry Elrod, in Rutkin, 3 Family Law and Practice, Child Custody and Visitation §32.09[3][c], pp. 32-278 to 32-279 (MB July 2005), cautioned:

"As with awarding custody, the court may consider the child's wishes as to visitation. The court must balance its *parens patriae* role with its recognition of the importance of respecting the child's wishes. The weight to be given the child's preference depends upon the child's age and maturity. Even in jurisdictions that give great weight to the preferences of older children, the children's wishes are not controlling.

"Courts are reluctant to put too much weight on the child's desires as to visitation because the child's immature emotions or the custodial parent's disparaging comments about the other parent may form the basis for the child's feelings."

Here, the trial court should consider Evan's wishes when setting a parenting time schedule. Nevertheless, this cannot be the exclusive factor. In pointing out that children are more interested in their momentary desires than the long-range needs for developing a healthy relationship with both parents, the Mississippi Court of Appeals stated:

" 'While there is nothing wrong with the children being heard regarding their wishes, our law proceeds on the assumption that they are nevertheless children and, thus, more interested in the desire of the moment than in considering the long range needs for the development of a healthy relationship with both parents where that is possible.' [Citation omitted.]" *Ellis v. Ellis*, 840 So. 2d 806, 813 (Miss. App. 2003).

Consequently, in the absence of a finding under K.S.A. 2004 Supp. 60-1616(a) that "the exercise of parenting time would seriously endanger the child's physical, mental, moral or emotional health," the trial court should have set forth certain and reasonable times for David's parenting time with Evan. See Rutkin, 3 Family Law and Practice, Child Custody and Visitation § 32.09[5], p. 32-294 (MB July 2005) ("The visitation schedule should be detailed, taking into consideration the needs and desires of both parents and child."). The trial court should not have conditioned David's parenting time with Evan upon Evan's desires or requests to see his father.

Nevertheless, despite the clear statutory language of K.S.A. 2004 Supp. 60-1616(a) entitling a parent to reasonable parenting time, the dissent says that the trial court's parenting time order, conditioning the parenting time on the child's wishes, will suffice. The dissent argues for an unstated statutory purpose. In essence, the dissent would have us rewrite the plain language of K.S.A. 2004 Supp. 60-1616(a) to validate the parenting time order issued in this case. Nevertheless, our course must be directed by Kansas law.

To illustrate the lack of logic behind the dissent's argument, we will examine it in the form of a categorical syllogism:

Major Premise: All noncustodial parents, possessing an obsessive and compulsive personality disorder, may have their reasonable parenting time conditioned on the wishes of their children.

Minor Premise: Appellant is a noncustodial parents who has an obsessive and compulsive personality disorder.

Conclusion: Therefore, appellant may have his or her reasonable parenting time conditioned on the wishes of his or her children. Although this syllogism is logically correct, the rule established by it is logically inconsistent with K.S.A. 2004 Supp. 60-1616(a).

## Step One

Major Premise: If noncustodial parents are entitled to reasonable parenting time, their exercise of parenting time will not seriously endanger their children's physical, mental, moral, or emotional health.

Minor Premise: The noncustodial parent is entitled to reasonable parenting time.

Conclusion: Therefore, the noncustodial parent's exercise of parenting time will not seriously endanger his or her children's physical, mental, moral, or emotional health.

## Step Two

Major Premise: If noncustodial parents are entitled to reasonable parenting time, their parenting time should not be conditioned on the wishes of their children.

Minor Premise: The noncustodial parent is entitled to reasonable parenting time.

Conclusion: Therefore, the noncustodial parent's parenting time should not be conditioned on the wishes of his or her children.

We know that both of these major premises in our last two syllogisms are legally sound because they are based on K.S.A. 2004 Supp. 60-1616(a) and on the persuasive holdings in *Kreitz, Jordan, Morgan,* and *Nancy E.M.* The conclusions in these syllogisms conflict with the conclusion from the first syllogism. How do we have these logically sound syllogisms resulting in conflicting conclusions? The flaw lies in the major premise of the first syllogism. The major premise of the first syllogism is overbroad, is unsupported by statute, and rejects the clear statutory language of K.S.A. 2004 Supp. 60-1616(a).

K.S.A. 2004 Supp. 60-1616(a) preserves and promotes the comprehensive purpose of allowing reasonable parenting time to a noncustodial parent unless the court finds, after a hearing, that reasonable parenting time would seriously endanger the child's physical, mental, moral, or emotional health. Here, the trial court made no such factual finding that visitation would seriously endan-

ger Evan's physical, mental, moral, or emotional health. Moreover, the dissent concedes that the trial court never made such a factual finding.

The dissent's argument presents a narrow question in this case: What did our legislature mean when it used the phrase "entitled to reasonable parenting time" in enacting K.S.A. 2004 Supp. 60-1616(a)? As a verb, "entitled" means "[t]o furnish with a right." Webster's II New College Dictionary 376 (2001). The word "entitled" follows the noun "parent" in K.S.A. 2004 Supp. 60-1616(a). Clearly, the legislature intended to furnish the right of reasonable parenting time to a parent. The dissent is not concerned that K.S.A. 2004 Supp. 60-1616(a) does not contain the words "which may be conditioned on the child's wishes" after the statutory phrase "[a] parent is entitled to reasonable parenting time . . . ."

Although the clear statutory language of K.S.A. 2004 Supp. 60-1616(a) confers reasonable parenting time to a parent, the dissent would supplant a parent's statutory right to reasonable parenting time with that of the child's wishes. As we stated previously, the trial court may consider a child's wishes when setting a parenting time schedule. Nevertheless, this must not be the exclusive or controlling factor. Otherwise, the result advocated by the dissent would stymie the clear statutory mandate of K.S.A. 2004 Supp. 60-1616(a). For example, if children are given the option of determining what reasonable parenting time is, the statutory mandate under K.S.A. 2004 Supp. 60-1616(a) becomes meaningless. See *In re M.R.*, 272 Kan. 1335, 1342, 38 P.3d 694 (2002) (It is presumed that the legislature does not intend to enact useless or meaningless legislation.).

The dissent's support for this unstated statutory purpose distorts the basic canons of statutory interpretation. As noted previously, "[t]he legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed. . . . [Citation omitted.]" *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003). Furthermore, in interpreting statutes, "ordinary words are to be given their ordinary meaning, and a statute should not be so read as to

add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. [Citation omitted.]" *Dawson v. Prager*, 276 Kan. 373, 383, 76 P.3d 1036 (2003). The plain and simple language of K.S.A. 2004 Supp. 60-1616(a) provides noncustodial parents with a presumptive right to reasonable parenting time.

K.S.A. 2004 Supp. 60-1616(a) allows only one statutory exception to requiring a trial court to award reasonable parenting time: when the trial court finds, after a hearing, that reasonable parenting time would seriously endanger the child's physical, mental, moral, or emotional health. K.S.A. 2004 Supp. 60-1616(a) expressly makes a finding of endangerment a condition precedent to restricting the reasonable parenting time of a noncustodial parent. As stated previously, the trial court made no such factual finding in this case. In fact, the trial court's parenting time order allowing visitation between David and Evan implicitly indicates that the parenting time between them would not seriously endanger Evan's "physical, mental, moral or emotional health." The statutory exception to granting reasonable parenting time under K.S.A. 2004 Supp. 60-1616(a) was never fulfilled. Moreover, the presumption under K.S.A. 2004 Supp. 60-1616(a) that David was entitled to reasonable parenting time with Evan went unrebutted. As a result, the trial court had no statutory authority to restrict David's reasonable parenting time with Evan in the way that it did.

Finally, the dissent concludes by stating that "[t]he district court's parenting time order was not arbitrary, fanciful, or unreasonable." Assuming arguendo that the trial court had the statutory authority under K.S.A. 2004 Supp. 60-1616(a) to restrict David's parenting time as it did, the trial court abused its discretion in entering its order. Neither the trial court nor the dissent points to any evidence in the record to show that Evan and David would have engaged in any type of reasonable parenting time on their own. Moreover, in his brief, David states that he has not had any parental contact with Evan since late 2002. Thus, the trial court's parenting time order, if it was not based on evidence that David and Evan would exercise reasonable parenting time on their own, was completely hollow.

On the other hand, the dissent implies that "if Evan [had] repeatedly refused David's requests for reasonable parenting time," David could ask the trial court to modify its order under K.S.A. 2004 Supp. 60-1616(c). Subsection (c) gives the trial court authority to modify an order granting or denying parenting time or visitation rights if the modification would be in the best interests of the child. Nevertheless, if David sought relief under K.S.A. 2004 Supp. 60-1616(c), he would have to move for modification of the parenting time order. In addition, David would have the burden of proof on this motion. David would have to convince the trial court that it would be in the best interests of Evan to modify the current parenting time order. How does David go from enjoying an unrebutted presumption that he is entitled to reasonable parenting time to a situation where the burden would be shifted to him? What is the legal justification for this burden shift? The dissent offers none. Under K.S.A. 2004 Supp. 60-1616(a), the burden does not shift back and forth.

As a result, the parenting time order was not reasonable based on the existing facts of this case. The result advocated by the dissent is not warranted under Kansas law. Based on the trial court's failure to comply with K.S.A. 2004 Supp. 60-1616(a), we determine that the trial court abused its discretion in its order of parenting time and visitation. See *Unwitting Victim v. C.S.*, 273 Kan. 937, 944, 47 P.3d 392 (2002) (" 'An abuse of discretion occurs where the district court clearly erred or ventured beyond the limits of permissible choice under the circumstances.' "). Accordingly, we reverse the trial court's order and remand the case with directions to either set an appropriate and reasonable parenting time and visitation schedule or make the required statutory finding that the exercise of David's parenting time would seriously endanger Evan's physical, mental, moral, or emotional health.

*Therapy Precondition to David's Parenting Time*

Next, David argues that the trial court erred by effectively imposing a therapy precondition to his contact with Evan. Nevertheless, in its September 2004 memorandum decision, the trial court made clear that it was not imposing a therapy precondition to Da-

vid's contact with Evan. The trial court specifically stated: "Respondent's contact with Evan, his almost sixteen year old son, is *not* contingent upon Respondent's participating in therapy. It is, however, contingent upon said contact being mutually requested." (Emphasis added.) Based on this clear language in the trial court's order, we determine that David's argument is meritless.

*Special Master's Report*

Finally, David raises the following additional arguments on appeal: (1) The trial court erred in relying on the special master's report that was factually flawed; and (2) the trial court erred in relying on the special master's report that placed excessive reliance on questionable expert opinions. Because we have reversed the trial court's order and have remanded the case for the trial court to set an appropriate and reasonable schedule for parenting time and visitation, it is unnecessary to address these additional arguments.

Affirmed in part, reversed in part, and remanded with directions.

BUSER, J., dissenting: In a case of first impression, the majority holds that it is a per se abuse of discretion for a district court to order parenting time and visitation as mutually requested by a noncustodial parent and child. Under the tragic facts of this case, I believe the district court appropriately exercised its discretion by ordering the parenting time and visitation conditioned upon the mutual requests of David and his almost 16-year-old son, Evan, consistent with the mandate of K.S.A. 2004 Supp. 60-1616(a) that "[a] parent is entitled to *reasonable* parenting time." (Emphasis added.)

Supplemental Factual and Procedural Background

In order to validate the district court's appropriate exercise of discretion in this case, it is necessary to supplement the factual and procedural history summarized in the majority's opinion.

In the summer of 2001, David filed a motion with the district court seeking the appointment of psychologist, Dr. Susan Vorhees, to conduct expert evaluations of family members and to make rec-

ommendations regarding this domestic dispute. The district court acceded to David's request. As noted by the majority, Dr. Vorhees concluded that not only was Janet not responsible for alienating Evan from his father, but that David's own behavior caused his alienation from Evan. Following receipt of Dr. Vorhees' adverse report, David moved the court to set the report aside, accused Dr. Vorhees of violating professional ethics, and insisted upon her disqualification.

In an effort to facilitate resolution of the ongoing custody and parenting time dispute, the district court appointed retired District Judge James Buchele as case manager on January 24, 2002. After consultation with Evan's therapist, Judge Buchele recommended specific parenting time and visitation as approved by the case manager or the district court. David objected to this recommendation.

Four months later, Judge Buchele asked to withdraw as case manager after receiving two emails from David. One email, noted by the district court in its memorandum decision, stated:

"So, let me make myself abundantly clear. You have crossed the line on many occasions, but, one area in particular, that will remove your judicial protection and thereby expose you personally and your company to damages we have suffered. You have damaged me to the tune of $1 million and counting . . . . From my information, it appears that you have been sued many times in the past, but, you have used your cloak of judicial immunity for defense. That ! cloak will not be there this time.

"This is no 'veiled threat' as yours were."

Prior to Judge Buchele's withdrawal in June 2002, he issued a report to the district court which indicated: "I am not able to confirm Janet has actively initiated steps to isolate these children from their father. . . . It is my opinion that the boys' alienation from their father comes primarily from their father's own conduct."

Although Judge Buchele's report provided additional parenting and visitation time between David and Evan, 2 weeks later he filed a supplemental report which concluded: "This brief attempt at expanding David's parenting time appears to have been disastrous." With regard to David and Evan's relationship, Judge Buchele observed: "[T]he problems in this case cannot be resolved solely by

additional time [between] Evan and his father. . . . If this is re-
solvable it must first be addressed in therapy."

In July 2002, David's focus continued to be that Janet was alien-
ating his children from him. He moved the court for a parental
alienation syndrome (PAS) evaluation to be conducted by a na-
tionally known New Jersey psychiatrist, Dr. Richard Gardner. As
recounted by the district court:

"In this motion [David] extolled the virtues and qualifications of Dr. Gardner to
perform this evaluation and he adamantly requested such an evaluation, stating
that the parental alienation syndrome was likely the cause of his sons' alienation
from him. [David] offered to advance all of Dr. Gardner's fees and expenses, and
stated in his pleading:
' . . . if no alienation by the mother is found to have occurred, then [David] will
accept the current state of things with his children, seek appropriate therapeutic
intervention to solve the problem and move on with his life.' " (Emphasis added.)

While awaiting this evaluation, David also sought a court order
terminating therapy for himself, Janet, and his sons, including
Evan.

Janet strongly objected to the appointment of Dr. Gardner. Ac-
cording to the district court, David's response to that objection
"again lauded the value of a P.A.S. evaluation . . . further indi-
cating that Dr. Richard Gardner was a recognized authority on the
subject." David concluded his responsive pleading by stating:

"The Court should know, however, that it is not [David's] present intention to
offer any evidence in mitigation of Dr. Gardner's results should they run contrary
to his petition. He intends to accept Dr. Gardner's assessment and recommenda-
tions and, should they go contrary to his position, to focus his effort simply on
trying to reconnect with his children." (Emphasis added.)

In the court order appointing Dr. Gardner, prepared by David's
counsel, David promised the district court: "If Dr. Gardner finds
there is no P.A.S., then [David] will dismiss his present attempt to
have contact with his sons until they are ready to have contact with
him." (Emphasis added.)

The 137-page evaluation report by Dr. Gardner was filed with
the district court on January 24, 2003. The district court's memo-
randum decision cited the important conclusions contained in this
extensive report:

"a. There is no evidence that the children are suffering with the signs and symptoms of the parental alienation syndrome (PAS);

"b. There is no evidence that Janet is a PAS alienator;

"c. The primary source of the children's alienation from David is his own significant psychiatric difficulties, especially his obsessive-compulsive personality disorder and paranoid trends. . . . David's repeated refusal to recognize his own role in their alienation . . . produces a sense of frustration and hopelessness in them with regard to his changing. His minimization, denial, and even selective amnesia for his atypical behaviors frustrate the children even more . . . ."

After receipt of Dr. Gardner's report, David wrote Dr. Gardner a letter wherein he accused him of "potential fraud and malpractice." According to the district court, "Dr. Gardner viewed this as a malpractice law suit threat made by [David]." Furthermore, contrary to David's repeated written promises to the district court, he repudiated Dr. Gardner's report and promptly renewed his efforts for court-ordered parenting time and visitation with Evan.

Responding to David's latest filing, the district court appointed William F. Ebert, III, as special master in November 2003. In his January 2004 report, Ebert concluded, in part:

"Put simply, the evidence is overwhelming that the underlying problems in this case can be traced directly to David Kimbrell.

. . . .

"The Special Master believes that a large part of David's unrealistic expectations are grounded in his sincere conviction that he is a good father and has done nothing wrong. In David's mind, he is right. Dr. Vorhees, Judge Buchele, Dr. Gardner, Janet, and all the children are wrong.

. . . .

". . . Parenting adolescents frequently requires striking some rather delicate balances. David has been unable to do this, and has maintained an uncompromising position. He has pushed and pushed to the point that he now has lost control. The primary responsibility for correcting the problems which exist in this divided family is David's.

. . . .

"David has undermined the possibility of reviving his relationship with Evan . . . . There is little, if anything, that anyone other than David himself can do to effect improvements in the various relationships in this case. Absent substantial progress by David through individual therapy, the outlook for rebuilding David's relationships with his children is bleak."

In February 2004, consistent with the special master's recommendations, the district court encouraged David that if he "wanted

to establish a meaningful relationship with his children he would need to participate in individual therapy with a therapist who was knowledgeable about parental alienation syndrome and knowledgeable about parents who are 'emotionally abusive, especially those with significant psychiatric problems.' " This recommendation mirrored Dr. Gardner's recommendations. The district court also implemented Dr. Gardner's recommendation that Evan be encouraged to participate in therapy.

David's response to the district court's order based upon the special master's evaluation was predictable. As noted by the district court: "On March 8, 2004, the special master informed the court that [David's] attorney indicated that [David] was unwilling to participate further with the special master. It was [David's] view that the special master was biased."

Ultimately, in September 2004, the district court, noting that Evan was almost 16 years old, ordered that his "parenting time with his father, given his maturity and the history of this case, should be as is mutually requested."

## Issue on Appeal

At the outset, I concur with the majority that David has a statutory right to reasonable parenting time with Evan pursuant to K.S.A. 2004 Supp. 60-1616(a). Moreover, absent a specific finding by the district court (which was not made in this case) "that the exercise of parenting time would seriously endanger the child's physical, mental, moral or emotional health," K.S.A. 2004 Supp. 60-1616(a) conveys to every noncustodial parent a right to parenting time and visitation. I also agree with the majority's finding that the district court's September 2004 order "indicated that David should be allowed to have parenting time with Evan."

The critical question: Is it a per se abuse of discretion for the district court to order parenting time as "mutually requested" by David and Evan?

## Kansas Law Regarding Reasonable Parenting Time

Kansas law provides: "In determining visitation rights, the court's paramount concern is the best interests of the child." *In re*

*Marriage of Küster,* 245 Kan. 199, Syl. ¶ 2, 777 P.2d 272 (1989). Moreover, under Kansas law the district court has been entrusted with the responsibility to safeguard the child's best interests in parenting time and visitation matters. In one of the more thorough expositions regarding the district court's discretionary powers to limit or deny visitation, our Supreme Court stated:

"The broad authorization given to the [district] court by the statute to make any order to advance the welfare of a minor child certainly entails, *within discretion, the authority to limit or deny visitation privileges* where the child's welfare is concerned.

"Under such circumstances as existed here the paramount consideration is the welfare and best interests of the child and the trial court is in the best position to judge whether the best interests of the child are being served. (*Bergen v. Bergen,* 195 Kan. 103, 403 P.2d 125; *Lyerla v. Lyerla,* 195 Kan. 259, 403 P.2d 989, and *Gardner v. Gardner,* 192 Kan. 529, 389 P.2d 746.)

"Courts of most jurisdictions are ordinarily reluctant to deny all visitation rights but authorities are generally in agreement that such rights may be denied if the child's welfare would be jeopardized thereby. The right of visitation is not an absolute one and must yield to the good of the child." (Emphasis added.) *Donaldson v. Donaldson,* 198 Kan. 111, 113, 422 P.2d 871 (1967).

In short, over many years Kansas has developed a jurisprudence that has, as its hallmark, the protection and promotion of the best interests of the child in visitation matters, which now embraces parenting time under K.S.A. 2004 Supp. 60-1616(a). Moreover, the means to this worthy end, by statute and case law, always has been entrusted to the discretionary powers of the district court.

The rationale for this jurisprudence, the inherent limitations of an appellate court reviewing a district court's exercise of discretion, and the meaning of an "abuse of discretion" in the context of a domestic relations case have been set forth by our Supreme Court:

"Certain basic principles apply in determining an abuse of the trial court's discretion. The question of a change of custody is addressed to the sound judicial discretion of the trial court and the appellate court's review of the trial court's determination is very limited. (*Lewis v. Lewis,* [217 Kan. 366, 368, 537 P.2d 204].) The trial court is in the most advantageous position to judge how the interests of the children may be best served. (*Parish v. Parish,* [220 Kan. 131, 133, 551 P.2d 792]; and *Dalton v. Dalton,* 214 Kan. 805, 808, 522 P.2d 378.) While an appellate court has only the printed page to consider, the trial court has the advantage of seeing the witnesses and parties, observing their demeanor, and assessing the

character of the parties and quality of their affection and feeling for the children. (*Greene v. Greene*, 201 Kan. 701, 704, 443 P.2d 263.) The judgment of the trial court will not be disturbed without an affirmation showing of an abuse in the exercise of discretion. In *Schreiner v. Schreiner*, [217 Kan. 337, 343, 537 P.2d 165], our court defined abuse of discretion in custody battles as follows:

'Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion. All judicial discretion may thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds.' " *Simmons v. Simmons*, 223 Kan. 639, 643, 576 P.2d 589 (1978).

## Parenting Time Conditioned Upon Mutual Requests of Parent and Child

K.S.A. 2004 Supp. 60-1616(a) simply provides: "A parent is entitled to reasonable parenting time . . . ." As conceded by the majority, there are no Kansas cases which hold that a district court's order of parenting time based upon the mutual requests of a parent and child is not "reasonable parenting time" as required by K.S.A. 2004 Supp. 60-1616(a).

The majority relies on three cases from other states, however, to support its conclusion that "a trial court's orders regarding parenting time and visitation should not be conditioned upon a minor child's desire to see (or not see) the noncustodial parent." This precedent is unavailing because it is inapplicable to the facts of the present case.

At the outset, the majority cites to *Kreitz v. Kreitz*, 750 S.W.2d 681, 686 (Mo. App. 1988), wherein the Missouri Court of Appeals disapproved a section of a divorce decree which provided a noncustodial father visitation with his three children, then aged 8, 13, and 17 "as arranged to by the minor children." Significantly, two of these children were quite young and obviously immature to make important decisions regarding visitation. Moreover, the father claimed that the mother, "impeded his efforts to contact, visit or take temporary custody of their children." 750 S.W.2d at 683. By contrast, in the case at bar, there were extensive, uncontested expert opinions that Janet did not alienate Evan against David or

interfere with David's contacting of or visiting with Evan. These expert opinions corroborated the testimonies of Janet and the children. Finally, in *Kreitz* there was no history of counseling involving the father and his three children. In the present case, expert evaluations were extensive and illuminating and provided the district court with a wealth of information that established the importance of ordering parenting time conditioned upon David and Evan's mutual requests.

Similarly, the majority's citation to *Jordan v. Jordan*, 288 App. Div. 2d 709, 732 N.Y.S.2d 478 (2001), is factually distinguishable. In *Jordan*, in contrast to the present case, there was evidence the mother had influenced three children, then aged 14, 11, and 8, against the father who sought visitation. Once again, the young ages of these children contrast with Evan's age and obvious maturity. The New York court also noted that the father "obtained professional assistance, including medication, to deal with his depression . . . [and was not] a danger to his children." 288 App. Div. 2d at 710. In the present case, the district court concurred with the special master's recommendation that "[David] participate in therapy to attempt to gain some insight into his relationship with his biological children." In response, David appealed that recommendation with predictable hyperbole: "This ruling presents the continuing danger that 'therapists' will determine [David's] parental rights." (The majority correctly found David's claim to be "meritless.") The contrast could not be clearer: In *Jordan*, the father obtained counseling. Here, David actively resisted the district court's (and experts') recommendations to obtain specialized therapy essential to rebuilding his relationship with Evan.

Moreover, it is incorrect to suggest that New York has adopted a per se rule prohibiting visitation upon the consent of the child in all circumstances. In a case similar to the present one, *Jabri v. Jabri*, 193 App. Div. 2d 782, 783-784, 598 N.Y.S.2d 535 (1993), the appellate court upheld a ruling conditioning visitation on the wishes of a 16-year-old child where psychiatric testimony indicated compulsory visitation would not be in the child's best interests.

Finally, *Morgan v. Morgan*, 20 N.C. App. 641, 642, 202 S.E.2d 356 (1974), is also distinguishable because, unlike the present case,

the North Carolina trial court had conditioned visitation not only upon the wishes of a 14-year-old child, but also upon the consent of his mother. In the case at bar, the district court did not provide Janet with any authority to modify or limit David's parenting time and visitation, let alone preclude it.

It is not the universal rule that a child's wishes may never provide the sole criterion for either the limitation or denial of visitation:

"In a considerable number of cases, it has been argued that visitation rights should be denied because the child did not wish to see or actually feared seeing the parent seeking such rights. Where the evidence is convincing that the child is actually unwilling to see the parent, so that little good would be done by forced visitation, the courts will generally take the child's wishes into consideration. However, if the child's wishes seem but a parroting of the custodial parent's wishes, or if the child has never really known the parent seeking visitation, so that it does not have a proper basis for an intelligent decision, or if the child is not old enough to form a considered opinion, the child's wishes and fears will be strongly discounted." Annot., 88 A.L.R.2d 148, 181.

See *Pettry v. Pettry*, 20 Ohio App. 3d 350, 352-53, 486 N.E.2d 213 (1984).

A fair reading of precedents from other states yields the conclusion that it is not a per se abuse of discretion to order parenting time conditioned upon the mutual requests of a parent and child. Rather, this determination may be made by trial judges exercising their discretion in appropriate cases based upon specific factual circumstances.

I share the majority's concern that an order "giv[ing] the minor child the authority to determine the noncustodial parent's parenting time . . . can have the effect of denying the noncustodial parent his or her right to parenting time." I also agree with my colleagues that there exist two primary concerns with such parenting time and visitation orders. First, courts are reluctant to put too much weight on a child's desires because of the child's immature emotions. Second, the custodial parent's disparaging remarks about the noncustodial parent may inappropriately bias the child's feelings.

With these two primary concerns in mind, it is necessary to review the record to see if they are applicable to the facts of this

case. With regard to Evan's maturity at the time of the district court's order regarding mutually requested parenting time and visitation, Evan was in high school and 22 days from celebrating his 16th birthday. He maintained a high grade-point average with many "advanced placement" classes. In addition to his regular course work, Evan attended an independent study project to learn the Japanese language and, in fact, he was independently tutored in Japanese. He earned money as a soccer referee and also worked out at a local gym to improve his physical health. In short, the record is replete with facts to support the conclusion that Evan is a very intelligent, motivated, and mature young man.

With regard to Janet's influence over Evan as it relates to parenting time and visitation, this issue has been discussed in the majority's opinion, in the supplemental factual background, and in the district court's memorandum decision. The unanimous opinions of the evaluating experts (two of whom were specifically requested to conduct evaluations by David) were that Janet was not responsible for alienating any of the children from David. Dr. Gardner's opinions were especially forceful in this regard, advising the district court that he could find no evidence that Janet obstructed David's parenting time and that, despite Evan's and Dylan's resistance, Janet insisted that the boys visit their father. Dr. Gardner concluded: "Janet's insistence was genuine in that from everything I know of her, she really wants the children to have a relationship with their father and hopes that he would reduce the behaviors that were alienating them." Janet's persistence in encouraging Evan to have visitation with David was corroborated by one therapist, who noted that this persistence sometimes made Evan angry at his mother.

In summary, the record on appeal compels the conclusion that the two primary and justifiable concerns that courts typically raise about conditioning parenting time and visitation upon the desires or requests of a child are not present in this case. In fact, the record persuasively establishes that Evan has the requisite maturity and Janet has the best intentions to have made parenting time and visitation conditioned upon the mutual requests of father and son an appropriate option for the district court to consider.

### Was the Parenting Time Order Arbitrary, Fanciful, or Unreasonable?

Having established that Kansas law and many other jurisdictions do not per se prohibit parenting time and visitation conditioned upon the mutual requests of a parent and child and that the concerns courts typically express about such orders are not present in this case, the question remains: Was this parenting time and visitation order arbitrary, fanciful, or unreasonable, *i.e.*, an abuse of judicial discretion?

K.S.A. 2004 Supp. 60-1610(a)(3)(B) mandates that the district court consider all relevant factors regarding parenting time and visitation orders. Seven factors are specifically mentioned, and three of those are particularly relevant in this case:

"(B) In determining the issue of child custody, residency and parenting time, the court shall consider all relevant factors, including but not limited to:

. . . .

(iii) the desires of the child as to the child's custody or residency;

(iv) the interaction and interrelationship of the child with parents, siblings and any other person who may significantly affect the child's bests interests;

(vi) the willingness and ability of each parent to respect and appreciate the bond between the child and the other parent and to allow for a continuing relationship between the child and the other parent."

The majority correctly acknowledges that "the desires of the child" is only one of seven statutorily mandated factors to be considered by the district court with regard to parenting time and visitation. Having said that, however, my colleagues incorrectly assume that Evan's desires were the *exclusive factor relied on* by the district court in exercising its discretion to fashion a reasonable parenting time and visitation order. As a result, the majority fails to consider whether the district court's parenting time order was appropriate given the other relevant factors set forth in K.S.A. 2004 Supp. 60-1610(a)(3)(B).

A review of the three statutory factors above, together with the other important factors cited by the district court, conclusively shows the district court's parenting time order was not arbitrary, fanciful, or unreasonable given the facts of this case.

### The Desires of the Child

The record is painfully clear that Evan has resisted visitation with his father. The reasons for this resistance are serious, pervasive, and long-standing. Still, there was expert opinion evidence from Dr. Gardner to indicate that Evan and David want to repair their damaged relationship. Significantly, Dr. Gardner observed that Evan's antagonistic behavior "is probably rectifiable *if he will be allowed to have more input regarding the time he spends with his father.*" (Emphasis added.) Moreover, in December 2003, Special Master Ebert advised the parents: "Evan clearly wants a relationship with his Dad, but he is equally clear that he wants to rebuild the relationship gradually and *he does not want to be 'made' to adhere to any particular schedule at this time.*" (Emphasis added.)

In Janet's response to Dr. Gardner's findings, she wrote:

"I am in agreement with your preliminary recommendation that *the boys should not be required to visit David under a Court-ordered visitation schedule, but that the boys should be able to visit him any time they wish. In time, I firmly believe that they will visit him voluntarily.* The relationship between the boys and David has not improved when visits have been mandated." (Emphasis added.)

The majority concentrates its analysis on the possible perils of basing parenting time and visitation on a child's desires. In another case, that analysis may be valid. Here, however, Dr. Gardner's expert opinions, Special Master Ebert's conclusions, Janet's best judgment, and Evan's requests collectively provided the solid foundation upon which the district court made its ultimate determination.

David and the majority also focus on the possibility that parenting time and visitation based upon the desires or requests of a child "can have the effect of denying the noncustodial parent his or her right to parenting time." The *reality* in this case, however, is that a voluntary, open-ended, and mutually requested parenting time and visitation order provides the best opportunity for bringing about Evan and David's visitation. Moreover, under the district court's order, if Evan repeatedly refuses David's requests for reasonable parenting time, K.S.A. 2004 Supp. 60-1616(c) provides the

means for the district court to modify its order to impose a structured parenting time and visitation schedule.

The traditional parenting time and visitation schedules attempted previously have failed miserably. The district court's adoption of Evan's stated desire for voluntary, open-ended, and mutually requested parenting time and visitation (consistent with the expert opinions of Dr. Gardner, Special Master Ebert's recommendation, and Janet's assessment) was in full accord with the requirements of K.S.A. 2004 Supp. 60-1616(a) that parenting time be "reasonable." In this factual context, the district court's order was not arbitrary, fanciful, or unreasonable.

### Interaction and Interrelationship of the Child with Parents

As thoroughly substantiated by the reports of the experts, case manager, and special master, Evan's relationship with his father is broken. Moreover, the primary cause of this unfortunate situation is David's obsessive and compulsive personality disorder. As described by Dr. Gardner with regard to David's relationship with Evan and the other children: "We see here obsession; we see here controlling behavior; we see here manipulation."

It borders on understatement to observe that if the origin of Evan's estrangement with his father is David's obsessive, compulsive, and manipulative personality, the empowering of Evan to have an equal standing and some control over the parenting time and visitation process enhances the potential for Evan to engage in visitation with his father.

The district judge showed insight into this dynamic when she wrote: "It is equally confusing to the court, and perhaps to [David's] children, that [David] stated that he would not pursue a requested parenting time schedule if the evaluator did not find parental alienation syndrome, and yet he is pursuing contact with a child which may not be mutually requested."

David's obsessive and compulsive personality was not simply reflected in his conduct with Evan. As detailed earlier, throughout this litigation David attempted to control and manipulate the district court—even to the extent of making false promises regarding

parenting time and visitation with Evan. Especially in this context, the district court did not err in holding David to his word.

*Willingness and Ability of Each Parent to Respect*
*the Bond Between Child and Other Parent and to Allow*
*for a Continuing Relationship*

As discussed earlier, there is substantial competent evidence that Janet is committed to facilitating a voluntary, open-ended, and mutually requested parenting time and visitation process. This is a promising development essential to achieving the reintegration of David with his son Evan. The district court appropriately considered this factor in making its parenting time and visitation order.

In summary, the district court's order was not based solely upon Evan's desires or requests regarding visitation but also took into account two other statutory factors relevant to this case which clearly favored voluntary, open-ended, and mutually requested parenting time and visitation. The district court's exercise of discretion, therefore, was in full compliance with K.S.A. 2004 Supp. 60-1610(a)(3)(B) and K.S.A. 2004 Supp. 60-1616(a).

The district court's parenting time order was not arbitrary, fanciful, or unreasonable. To the contrary, it was rational, realistic, and thoughtful. The order was predicated upon the best interests of Evan and designed to facilitate Evan's desires to visit with his father on equal terms—voluntarily, gradually, and without manipulation. Importantly, the parenting time and visitation order also provided the last, best hope that David would abandon his "hostile and litigious proclivities," See *In re Hipple*, 124 Kan. 3, 4, 256 Pac. 1015 (1927), obtain essential therapy, and dedicate his efforts to the very personal and difficult process of reconciliation with his son.

I would affirm.