NOT DESIGNATED FOR PUBLICATION

No. 117,381

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

CRYSTAL M. GUSTAFSON,
*Appellant*,

and

STEVEN J. GUSTAFSON,
*Appellee.*

MEMORANDUM OPINION

Appeal from Stevens District Court; BRADLEY E. AMBROSIER, judge. Opinion filed March 16, 2018. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Wayne R. Tate*, of Tate & Kitzke L.L.C., of Hugoton, for appellee.

Before BUSER, P.J., BRUNS, J., and STUTZMAN, S.J.

BUSER, J.:  In November 2008, Crystal Kennedy (Mother) was found in contempt of a court order to make child support payments. A contempt sentencing hearing was scheduled; however, Mother failed to appear. The district court sanctioned Mother by suspending her parenting time with her minor child, R.G., until the contempt sentencing issue was resolved.

More than seven years later, in November 2016, Mother became current on child support payments and filed a motion to reinstate her parenting time. Steven Gustafson

1

(Father) and R.G., however, had moved to Texas more than five years before Mother filed the motion. As a result, the district court held it did not have jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) to reinstate Mother's parenting time. See generally K.S.A. 2017 Supp. 23-37,101 thru 23-37,405.

Mother appeals, arguing that the UCCJEA does not apply to her motion and, even if the UCCJEA did apply, Mother claims the district court had jurisdiction under the UCCJEA to reinstate her parenting time. We find no error in the district court's ruling that it did not have jurisdiction to reinstate Mother's parenting time. While we affirm the district court's jurisdictional ruling, we also make clear that suspension of parenting time to punish or coerce a party to perform certain acts in a domestic relations matter is not an appropriate sanction for contempt.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father are the parents of their minor child, R.G. The couple divorced on November 13, 2007, when R.G. was about 13 months old. An agreed upon parenting plan was incorporated into the divorce decree. Under the terms of the parenting plan, the parties were granted joint legal custody of R.G. Father was granted primary residential custody and Mother was granted scheduled parenting time. Mother's parenting time included visitation with R.G. on the third and fourth week of every other month, a substantial time during the summer, and during some holidays. Mother was also ordered to pay child support in the amount of $143 per month.

On November 12, 2008, Father filed a motion to terminate Mother's parenting time and a motion for citation. Father argued Mother's parenting time should be terminated because she owed $1,716 in unpaid child support and, in violation of the parenting plan, had moved multiple times without disclosing her contact information. In his motion for citation, Father asserted that Mother was guilty of indirect contempt because she violated

2

the district court order requiring her to pay child support in the amount of $143 per month.

On November 20, 2008, a hearing was held on Father's motion. Following the hearing, the district court denied the motion to terminate Mother's parenting time but found Mother in contempt for nonpayment of child support. Sentencing on the contempt finding was scheduled for June 25, 2009, and Mother was ordered to personally appear. She was also ordered in the meantime to make timely child support payments and reduce her child support debt.

Seven months later, on June 25, 2009, Mother failed to appear at the contempt sentencing hearing. The district court found that Mother had made her last child support payment on October 20, 2007, with no payments since the last hearing. Due to Mother's nonappearance, the district court issued a bench warrant for her arrest and ordered: "Due to [Mother's] failure to appear as ordered by the Court, [her] parenting time with the minor child is hereby suspended effective immediately, until the pending contempt sentencing is resolved or until further order of the Court."

More than seven years later, on November 5, 2016, Mother filed a motion to set aside the bench warrant and reinstate her parenting time. In this motion, Mother asserted she had made substantial payments, totaling $15,326, towards her child support debt and included records evidencing her child support payments. Based on her substantial payments, Mother sought withdrawal of the bench warrant, the purging of the contempt order, and reinstatement of her parenting time.

On November 16, 2016, the district court withdrew the bench warrant and set a hearing for Mother's remaining motions. Prior to the hearing on Mother's motion to reinstate parenting time, Father filed a motion to dismiss arguing that, under the UCCJEA, the district court did not have jurisdiction to hear the motion. Mother

3

responded to Father's motion to dismiss by arguing the unclean hands doctrine allowed the district court to retain jurisdiction to rule on Mother's motion.

An evidentiary hearing was held on January 10, 2017. At the hearing, it was shown that Mother's child support obligations had been satisfied. As a result, the district court found that Mother had purged herself of contempt.

The district court then considered Father's motion to dismiss Mother's request to reinstate parenting time. Father testified that since the divorce, R.G. has continuously resided with him. Father stated he and R.G. moved to Panhandle, Texas, on January 1, 2011, and continuously resided there. To Father's knowledge, Mother continued to reside in Colorado since he moved to Texas. Father believed Mother had not personally contacted R.G. since November 23, 2008. He said that any evidence relating to child-custody and visitation would be in Texas. Father also testified that he and R.G. had no contact with the state of Kansas during the last six years.

Mother testified that she had dual residency in Colorado and Kansas. Mother explained that she primarily resides in Pritchett, Colorado, while she conducts business and also has a home in Hoxie, Kansas. According to Mother, she moved to Colorado after filing for divorce. She agreed that she has not primarily resided in Kansas since 2011. Mother also acknowledged "the State of Kansas has had no contact with the minor child or [Father] since he moved January 1, 2011."

In making its ruling, the district court determined that it should rely on K.S.A. 2017 Supp. 23-37,202 of the UCCJEA to determine whether it had jurisdiction to hear Mother's motion to reinstate parenting time. The district court specifically found that neither Mother, Father, nor R.G. resided in Kansas. The district court also found that it did not have jurisdiction under the UCCJEA to hear Mother's motion because neither R.G. nor her parents had significant contacts with Kansas, substantial evidence

4

concerning R.G. was no longer present in Kansas, and the unclean hands doctrine did not apply. Accordingly, the district court granted Father's motion to dismiss for lack of jurisdiction. Mother appeals.

INTRODUCTION

On appeal, Mother contends the district court erred by finding it did not have jurisdiction to reinstate her parenting time. Specifically, Mother argues the UCCJEA did not apply to her motion to reinstate parenting time and, even if it did apply, the district court erred by concluding it did not have jurisdiction.

Subject matter jurisdiction is created by statute and establishes the court's authority to hear and decide a certain type of action. If a district court determines it lacks subject matter jurisdiction, then it has no authority to reach the merits of the case and is required as a matter of law to dismiss it. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009). Whether jurisdiction exists is a question of law over which we have unlimited review. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015).

APPLICABILITY OF THE UCCJEA TO MOTHER'S MOTION
TO REINSTATE PARENTING TIME

Mother first argues the district court erred by finding the UCCJEA was applicable to her motion to reinstate parenting time. Highlighting K.S.A. 2017 Supp. 23-3218, Mother asserts "the UCCJEA applies ONLY to the modification of prior orders of custody, residency, visitation and parenting time, following the showing of a material change in circumstances." Mother then suggests her motion does not seek a modification of child-custody or placement since she only sought to remove the contempt citation which triggered the removal of the suspended parenting time. Mother then claims that

only the district court had jurisdiction to resolve the issue of contempt, as "contempt actions are solely within the purview of the issuing, district court."

The UCCJEA is a jurisdictional act that restricts subject matter jurisdiction over child-custody issues. *In re A.A.*, 51 Kan. App. 2d 794, 804, 354 P.3d 1205 (2015). A proceeding that affects access to the child is subject to the UCCJEA. UCCJEA § 102 cmt., 9 (Part 1A) U.L.A. 659 (1999). "The UCCJEA seeks to avoid jurisdictional competition between the courts of different states over child-custody matters. It does so through rules that generally make sure that only one state at a time has jurisdiction (authority) over child-custody matters in any particular family." *In re A.A.*, 51 Kan. App. 2d at 804.

The UCCJEA is implicated when a court seeks to modify a prior child-custody determination which that court had made. Under K.S.A. 2017 Supp. 23-37,202(b): "A court of this state which has made a child-custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under K.S.A. 23-37,201, and amendments thereto." Accordingly, the district court was required to determine if it had jurisdiction under the UCCJEA if it sought to modify a prior child-custody determination.

The UCCJEA contains definitions of both the terms "modification" and "child-custody determination." A modification is defined as: "a child-custody determination that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination." K.S.A. 2017 Supp. 23-37,102(12). A child-custody determination is defined as:

> "a judgment, decree or other order of a court providing for the legal custody, physical
> custody or visitation with respect to a child. The term includes a permanent, temporary,

6

initial and modification order. The term does not include an order relating to child support or other monetary obligation of an individual." K.S.A. 2017 Supp. 23-37,102(4).

Importantly, this is a "sweeping definition that, with the exception of adoption, includes virtually all cases that can involve custody of or visitation with a child as a 'custody determination.'" UCCJEA, Prefatory Note, 9 (Part 1A) U.L.A. 651-52.

In this case, the order Mother sought to set aside was the district court's June 2009 suspension of her parenting time. The comments to the uniform act contemplate that reinstating Mother's parenting time is subject to the UCCJEA since such action would affect her access to the child. See UCCJEA § 102 cmt., 9 (Part 1 A) U.L.A. 659. Moreover, reinstating Mother's parenting time would modify a prior child-custody determination requiring the application of the UCCJEA. The definitions provided by the UCCJEA mandate this conclusion.

The June 2009 suspension of Mother's parenting time was a child-custody determination because it was an "order of a court providing for the . . . physical custody or visitation with respect to a child." K.S.A. 2017 Supp. 23-37,102(4); see *In re Marriage of Medill*, 179 Or. App. 630, 647, 40 P.3d 1087 (2002) (noting that a contempt sanction which changes parenting time is a child-custody determination subject to the UCCJEA because it is *providing* for the legal custody, physical custody, parenting time, or visitation with respect to the parties' children). Although the order was meant to be temporary, this fact does not affect the suspension order's status as a child-custody determination. K.S.A. 2017 Supp. 23-37,102(4); *Kaiser v. McClendon*, 230 Kan. 472, 475, 639 P.2d 39 (1982).

Reinstating Mother's parenting time constitutes a modification of the suspension order because it is an order providing for the physical custody or visitation of the child that "changes, replaces, supersedes, or is otherwise made after" the previous

determination to suspend Mother's parenting time. K.S.A. 2017 Supp. 23-37,102(12). Accordingly, if the district court reinstated Mother's parenting time, it would be modifying a child-custody determination it had made previously. Under these circumstances, the district court was required to determine if it had jurisdiction under the UCCJEA pursuant to K.S.A. 2017 Supp. 23-37,202(b).

We acknowledge that Mother may be correct that the provisions of the UCCJEA are not applicable to the *finding* or *purging* of contempt. See, e.g., *In re Marriage of Medill*, 179 Or. App. at 646 (an enforcement proceeding brought through a motion for contempt does not provide for custody or parenting time and therefore is not subject to the UCCJEA). However—as in this case—an order which imposes additional or different parenting time as a sanction for contempt constitutes a child-custody determination, and reinstating the parenting time to the former status quo is a modification of that determination subject to the UCCJEA. See *In re Marriage of Medill*, 179 Or. App. at 647. The district court was correct in applying the UCCJEA in its determination of whether it had jurisdiction to reinstate Mother's parenting time.

THE DISTRICT COURT WAS NOT PRECLUDED FROM RELINQUISHING JURISDICTION

For her next argument, Mother relies on the statute governing indirect contempt and *Alpha Med. Clinic v. Anderson*, 280 Kan. 903, 128 P.3d 364 (2006), in contending that the district court should not have relinquished jurisdiction since "[n]o other court in any other state besides Kansas could have resolved the issue of contempt because no other state could have jurisdiction to rule on the Kansas court's finding of contempt."

The statutory procedure governing indirect contempt is provided in K.S.A. 2017 Supp. 20-1204a, which states in part:

"When an order in a civil action has been entered, *the court that rendered the same* may order a person alleged to be guilty of indirect contempt of such order to appear and show cause why such person should not be held in contempt if there is filed a motion requesting an order to appear and show cause which is accompanied by an affidavit specifically setting forth the facts constituting the alleged violation." (Emphasis added.) K.S.A. 2017 Supp. 20-1204a(a).

In *Alpha Med. Clinic*, our Supreme Court noted that the language contained in K.S.A. 2017 Supp. 20-1204a(a) is a jurisdictional limitation on a court's ability to find a party in indirect contempt of a court order. 280 Kan. at 927. As a result, the court held that under the indirect contempt statute, the district court that rendered the underlying order, rather than the Kansas Supreme Court, must first address contempt allegations stemming from such order. 280 Kan. at 927.

The jurisdictional limitations in K.S.A. 2017 Supp. 20-1204a(a) would not apply to Mother's motion to reinstate parenting time. The jurisdictional limitations in K.S.A. 2017 Supp. 20-1204a apply to the court's ability to hold a party in indirect contempt for violating a prior order of the court. Specifically, K.S.A. 2017 Supp. 20-1204a(a) allows the court issuing the underlying order to "order a person . . . to appear and show cause why such person should not be held in contempt" and punish such person if the court determines that person is guilty of contempt.

Here, Mother is not trying to enforce a prior court order by way of indirect contempt. While Mother seeks to remove a sanction which occurred during a contempt proceeding, she does not ask the court to punish a party for contempt or order a party to appear and show cause why they should not be held in contempt. Mother's motion did not implicate the jurisdictional limitations of K.S.A. 2017 Supp. 20-1204a. Accordingly, the district court was not precluded from relinquishing jurisdiction over her motion to reinstate parenting time.

## THE DISTRICT COURT CORRECTLY ASSESSED
## JURISDICTION BASED ON 2016 FACTS

In Mother's prior argument, she essentially claims that her motion to reinstate parenting time was a continuation of the court's earlier contempt citation proceedings. While an order reinstating Mother's parenting time is subject to the jurisdictional requirements of the UCCJEA, her argument that reinstating parenting time was the latest part of the contempt action raises another issue not explicitly addressed in her brief: Was the district court correct to use the facts as they existed when Mother filed her motion to reinstate parenting time in 2016, as opposed to an earlier date, to determine jurisdiction under the UCCJEA?

A district court assesses whether it has jurisdiction under the UCCJEA based upon the facts as they exist on the date the proceeding was commenced. K.S.A. 2017 Supp. 23-37,201(a)(1); UCCJEA § 202 cmt., 9 (Part 1A) U.L.A. 674. The UCCJEA defines "[c]ommencement" as "the filing of the first pleading in a proceeding." K.S.A. 2017 Supp. 23-37,102(6). In an action to modify a prior child-custody determination, jurisdiction under the UCCJEA is analyzed based on the factual circumstances as they existed at the time the modification motion was filed. See *Harter v. Szykowny*, No. 112,206, 2015 WL 5458602, at *5-6 (Kan. App. 2015) (unpublished opinion) (using the date of the motion to modify custody in determining whether the parents or child resided in Kansas for the purposes of a post-divorce action); *S.K.C. v. J.L.C.*, 94 A.3d 402, 411 (Pa. Super. 2014); *L.N.S. v. S.W.S.*, 854 N.W.2d 699, 705 (Iowa Ct. App. 2013).

In this case, Mother's parenting time was suspended until the pending contempt sentencing was resolved or until further order of the district court. On November 5, 2016, Mother filed the motion asking the district court to purge her of contempt and reinstate her parenting time due to the substantial payments recently made towards her unpaid child-support debt. By asking the district court to reinstate her parenting time, Mother

10

commenced a proceeding to modify the order suspending her parenting time. While evidencing compliance with the conditions to trigger the removal of the 2009 suspension, Mother's motion brought a child-custody issue back before the district court to make another child-custody determination based on a new set facts. This required a new analysis of jurisdiction under the UCCJEA. The district court properly determined whether it had jurisdiction based on the facts as they existed in 2016.

## THE DISTRICT COURT PROPERLY FOUND THERE WAS NO JURISDICTION UNDER THE UCCJEA

Next, Mother contends the district court erred by finding it did not have jurisdiction under the UCCJEA. A court has jurisdiction under the UCCJEA to modify a prior child-custody determination which that court has made only if the court has: (1) exclusive, continuing jurisdiction; or (2) jurisdiction to make an initial determination. K.S.A. 2017 Supp. 23-37,202(b).

Relevant to this case, the UCCJEA provides that a court which has made a prior child-custody determination has exclusive, continuing jurisdiction until:

"(1) A court of this state determines that neither the child, the child's parents, and any person acting as a parent do not have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

"(2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state." K.S.A. 2017 Supp. 23-37,202(a).

While the district court primarily relied on K.S.A. 2017 Supp. 23-37,202(a)(1) to determine it did not have exclusive, continuing jurisdiction, it also found that Mother, Father, and R.G. were not presently residing in Kansas. As a result, the district court

11

could have relied on either K.S.A. 2017 Supp. 23-37,202(a)(1) or K.S.A. 2017 Supp. 23-37,202(a)(2) to find that it did not have exclusive, continuing jurisdiction under the UCCJEA. For the sake of completeness, we will consider each statutory provision in our review of the question of whether the district court erred in concluding that it did not have exclusive, continuing jurisdiction.

*K.S.A. 2017 Supp. 23-37,202(a)(1)*

Under K.S.A. 2017 Supp. 23-37,202(a)(1), "exclusive, continuing jurisdiction will no longer exist if the relationship between the child and the person remaining in the state with exclusive, continuing jurisdiction becomes so attenuated that a court could no longer find significant connections and substantial evidence." *In re Marriage of Ruth*, 32 Kan. App. 2d 416, 421, 83 P.3d 1248 (2004). Even assuming Mother continued to reside in Kansas, the district court would lose exclusive continuing jurisdiction if the relationship between Mother and R.G. was so attenuated that a court could no longer find significant connections and substantial evidence.

"Visitation within the state is generally considered as evidence of a significant connection, particularly when the children maintain a relationship with relatives in the state other than the noncustodial parent." *In re A.C.S.*, 157 S.W.3d 9, 16 (Tex. Civ. App. 2004). For example, in *In re Marriage of Ruth*, our court found that the children had a sufficient connection with Kansas when they regularly visited their father, who resided in this state two weekends per month in addition to eight weeks during the summer. However, in *In re Isquierdo*, 426 S.W.3d 128, 132-33 (Tex. App. 2012), the court held that, although the children had occasionally visited their father in Texas in the past, there was "no evidence of any visitation within Texas during the last two and one-half years to support a finding of a 'significant connection.'"

12

In this case, the record supports the district court's finding that there was no significant connection with Kansas. The evidence was uncontroverted that R.G. moved to Texas on January 1, 2011. Since that date, there was no visitation with Mother in Kansas. It was also uncontroverted that "the State of Kansas has had no contact with the minor child or [Father] since he moved January 1, 2011." Although Mother was prevented from having scheduled parenting time with R.G. by court order, it appears the parenting time would have occurred in Colorado, and not Kansas. As a result, Mother and R.G.'s relationship in Kansas was so attenuated that there was not a significant connection with the state.

The district court also did not err by finding that substantial evidence regarding R.G. was no longer available in this state. One court has said that "[t]he requirement of the availability of 'substantial evidence' should be understood to require optimum access to relevant evidence." *In re Marriage of Medill*, 179 Or. App. at 642. For example, in *Billhime v. Billhime*, 952 A.2d 1174, 1177 (Pa. Super. 2008), the court found substantial evidence concerning the child's care, protection, training, and personal relationships was no longer available in Pennsylvania, while noting the children's medical care, school attendance, family and good friends, and participation in extracurricular activities were all in Florida.

Here, R.G. moved to Texas when she was four years old and attends school in Texas. R.G. has resided in Texas since her move in January 2011 and did not have any significant contacts with Kansas since that date. As the district court determined, the record is void of any evidence regarding R.G.'s care, protection, education, or personal relationships in Kansas. As a result, the district court did not err in determining it did not have exclusive, continuing jurisdiction.

13

*K.S.A. 2017 Supp. 23-37,202(a)(2)*

While the district court findings under K.S.A. 2017 Supp. 23-37,202(a)(1) were sufficient to support the conclusion that the district court lost exclusive, continuing jurisdiction, we also note that the district court did not err in determining that R.G., Mother, and Father do not presently reside in Kansas. See K.S.A. 2017 Supp. 23-37,202(a)(2). Mother does not challenge the district court's determination that Father and R.G. resided in Texas and only contests the finding that she was not a resident of Kansas.

"[A] determination of residence by a trial court is generally a question of fact which will be upheld on appeal when supported by substantial competent evidence." *Teter v. Corley*, 2 Kan. App. 2d 540, 542, 584 P.2d 651 (1978); *In re Adoption of A.M.M.*, 24 Kan. App. 2d 605, 609-10, 949 P.2d 1155 (1997). "Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion." *In re Marriage of Kimbrell*, 34 Kan. App. 2d 413, 420, 119 P.3d 684 (2005).

The comments to the uniform act provide:

> "The phrase 'do not presently reside' is not used in the sense of a technical domicile. The fact that the original determination State still considers one parent a domiciliary does not prevent it from losing exclusive, continuing jurisdiction after the child, the parents, and all persons acting as parents have moved from the State." UCCJEA § 202 cmt., 9 (Part 1A) U.L.A. 674.

The phrase "presently reside" necessitates a broad inquiry into the "totality of the circumstances that make up domicile—that is, a person's permanent home to which he or she intends to return to and remain." *Brandt v. Brandt*, 268 P.3d 406, 415 (Colo. 2012). For example, in *In re Marriage of Akula*, 404 Ill. App. 3d 350, 361, 935 N.E.2d 1070 (2010), the court held that, although the mother owned a home in Illinois, the recognition

14

by a foreign court that the mother, father, and child are "now ordinarily residing" in a foreign country necessarily implied that they did not presently reside in Illinois.

In this case, there was no evidence regarding how often Mother went to her home in Kansas or how often she did business in Kansas. However, Father testified that to his knowledge Mother "has always resided and continues to reside" in Colorado since his move in 2011. Mother said that after she petitioned for divorce, she "moved back to Colorado." Although Mother stated she had dual residency, she explained that she had a home in Kansas but resided in Colorado. Mother testified that her primary residence was in Colorado and she had not primarily resided in Kansas since at least 2011.

As this evidence shows, the district court's determination that Mother no longer resided in Kansas was supported by substantial competent evidence. Mother's testimony that she moved back to Colorado supports the conclusion that she physically left the state of Kansas to live in Colorado. Similar to the foreign decree in *In re Marriage of Akula*, Mother's testimony that she now primarily resides in the state of Colorado necessarily implies that she no longer resides in the state of Kansas. The district court did not err in concluding that the child and her parents did not presently reside in this state. Accordingly, the district court did not have exclusive, continuing jurisdiction and could only modify the prior child-custody determination if it had jurisdiction to make an initial determination under K.S.A. 2017 Supp. 23-37,201.

### THE COURT DID NOT HAVE INITIAL JURISDICTION TO REINSTATE MOTHER'S PARENTING TIME

A Kansas court has jurisdiction to make an initial child-custody determination only if:

"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the

15

commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

"(2) a court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under K.S.A. 23-37,207 or 23-37,208, and amendments thereto, and:

(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

"(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under K.S.A. 23-37,207 or 23-37,208, and amendments thereto; or

"(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)." K.S.A. 2017 Supp. 23-37,201(a).

"Home state" is defined as:

"the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period." K.S.A. 2017 Supp. 23-37,102(8).

Subsections (1), (2), (3), and (4) are alternative grounds for the district court to exercise jurisdiction in a child-custody or placement dispute. If any of these grounds applied, the district court had jurisdiction to entertain Mother's motion.

16

With regard to subsection (1), it was undisputed that R.G. had been living continuously in Texas since January 1, 2011. As a result, Texas was the home state of R.G. on both the date of and six months prior to the commencement of the proceeding in November 2016. Subsection (1) cannot be a basis for the Kansas court to exercise jurisdiction. With regard to subsection (2), Texas had jurisdiction pursuant to subsection (1) and Texas had not declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child. Thus, subsection (2) cannot be a basis for Kansas jurisdiction. For the same reasons, subsection (3) does not apply. Finally, subsection (4) does not apply because Texas has jurisdiction under the criteria of subsection (1). Considered together, the district court did not err in finding that it did not have jurisdiction under the UCCJEA to reinstate Mother's parenting time.

In summary, the UCCJEA applied to Mother's motion to reinstate her parenting time. The district court was correct to analyze whether it had jurisdiction under the UCCJEA by considering the facts as they existed in November 2016. Finally, under the facts as they existed in November 2016, the district court was without jurisdiction to reinstate Mother's parenting time. Since the district court correctly determined that it did not have jurisdiction under the UCCJEA to reinstate Mother's parenting time, the district court's order is affirmed.

SUSPENSION OF PARENTING TIME AS A SANCTION FOR CONTEMPT

Finally, we pause to comment on a troubling aspect of this case—the 2009 suspension of Mother's parenting time as a sanction for contempt. Because the validity of the contempt sanction was not raised by either party on appeal, we do not consider the merits of whether this particular contempt sanction suspending Mother's parenting time was valid. See *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 281, 225 P.3d 707 (2010) (an issue not briefed on appeal is deemed abandoned).

17

However, to avoid any misunderstanding of Kansas law it is important to state that the suspension of parenting time to punish or coerce a party to perform certain acts in a domestic relations case is not a proper sanction for contempt.

When deciding a child-custody issue as between the parents, "the paramount consideration of the court is the welfare and best interests of the child." *Harrison v. Tauheed*, 292 Kan. 663, Syl. ¶ 1, 256 P.3d 851 (2011); K.S.A. 2016 Supp. 23-3201. A custody determination provides stability in a child's life and "[s]tability is hard to maintain when changes of custody occur." *In re Marriage of Fawcett*, No. 117,313, 2017 WL 4082249, at *2 (Kan. App. 2017) (unpublished opinion). To provide for stability, orders of parenting time may only be modified "when a material change of circumstances is shown." K.S.A. 2017 Supp. 23-3218(a).

If the court finds a material change in circumstances has occurred, the court must determine whether the best interests of the child dictate a change in the current parenting time schedule and devise a parenting time arrangement that serves those interests. See K.S.A. 2017 Supp. 23-3221(a). K.S.A. 2017 Supp. 23-3203 requires that in determining the parenting time of a child, the district court is to consider "all relevant factors" and includes 18 nonexclusive factors. The statutory requirements are clear; a custody or parenting time determination "must be made in the best interests of the child, not in retaliation for a parent's misconduct." *In re Marriage of Grippin*, 39 Kan. App. 2d 1029, 1033, 186 P.3d 852 (2008).

Moreover, "[a] parent is entitled to reasonable parenting time unless the court finds, after a hearing, that the exercise of parenting time would seriously endanger the child's physical, mental, moral or emotional health." K.S.A. 2017 Supp. 23-3208(a).

"The clear intent of [K.S.A. 2017 Supp. 23-3208(a)] is to create a rebuttable presumption that a parent is entitled to reasonable parenting time and visitation. This presumption may

be rebutted if, after a hearing, the trial court finds 'that the exercise of parenting time would seriously endanger the child's physical, mental, moral or emotional health.'" *In re Marriage of Kimbrell*, 34 Kan. App. 2d at 422.

An order providing for parenting time and visitation must comply with K.S.A. 2017 Supp. 23-3208(a), and an order that denies the noncustodial parent parenting time is invalid if that order was made without a finding that "'the exercise of parenting time would seriously endanger the child's physical, mental, moral or emotional health.'" *In re Marriage of Kimbrell*, 34 Kan. App. 2d at 424.

These statutory requirements cannot be reconciled with a summarily entered contempt sanction suspending parenting time without any consideration of changed circumstances or the best interests of the child. While a court must be able to enforce its own orders and has the power to punish for contempt, that power to punish does not include the modification of a child-custody determination without first finding that there has been a material change in circumstances and the best interests of the child warrant such modification. 27C C.J.S., Divorce § 1109 ("Since a custody award must be based upon the best interests of the children, a change of custody may not usually be used as a means of enforcing visitation rights or otherwise punishing a parent for contempt."); Elrod, Child Custody Practice & Procedure § 17:25, p. 1834 (2018) ("A change in custody should not be used as a sanction for contempt.").

Contrary to the handling of the contempt proceedings in this case, the suspension of parenting time to punish or coerce a party to perform certain acts in a domestic relations case is not a proper sanction for contempt.

Affirmed.